**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

JAMES EDWARD MEEKS,

    Plaintiff,

v.                                              Case No. 15-14270

CITY OF DETROIT, et. al.,

    Defendants.
    _____/

**OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Illustrating the difficulties attendant to photo array identification procedures, this malicious prosecution claim arises from criminal charges brought against Plaintiff James Edward Meeks in connection with three armed robberies that took place within a few hours on June 8, 2015. Meeks committed one of the robberies, to which he confessed. The victim of that robbery gave a cogent statement and pointed officers to the intersection and neighborhood in which he (correctly) believed Meeks resided, but soon became hard to locate. The readily available victims in the two other robberies were shown mug shots and both positively identified the same suspect; police thought it was Meeks but it was not. The problem arose when the computerized mug shot generator responded to a query for "James Meeks" with two shots of Plaintiff Meeks, *and* one of an unrelated man, James *Meekslittle.* The similarity of the surnames apparently outweighed the difference, and for other reasons that are not entirely clear, the photo of Meekslittle was the one chosen to place in the photo array. Compounding the mistake, it

was the photo of Meekslittle that was positively identified as the robber by two of the four victim witnesses.

In his December 7, 2015 complaint, Plaintiff alleges state and federal civil rights violations by various officers involved in the investigation, as well as by Defendant City of Detroit. This court has dismissed Plaintiff's state law claims without prejudice, leaving Plaintiff with two counts alleging violations of his federal constitutional rights brought under 42 U.S.C. § 1983. (Dkt. # 18.) One count alleges malicious prosecution against Defendants Sergeant Otha Craighead, Detective Terry Cross-Nelson, Detective Dana Russell, and Detective Shawn Schmelter ("Defendant Officers"); the other is against the city under *Monell v. Department of Social Services,* 436 U.S. 658 (1978). (*Id.*) Now before the court is a Motion for Summary Judgment filed by all Defendants on August 10, 2016. (Dkt. # 27.) The motion is fully briefed and a hearing was held on November 2, 2016. For the reasons that follow, the court will grant Defendants' motion.

## I. BACKGROUND

The following facts are undisputed unless otherwise noted. At approximately 2:20 a.m. on June 8, 2015 a gas station attendant at the Fast Track Gas Station, located at 12800 East 7 Mile Road in Detroit, Michigan, flagged down four city police officers. (Dkt. # 27-7.) The attendant told the officers that someone had fired a gun inside the gas station, after which men inside the station ran out. (*Id.*) Two officers went into the gas station and spoke to Terrell Floyd. Floyd told the officers that a man had entered the gas station with a firearm and demanded that Floyd and an unidentified individual "empty [their] pockets" and fired his weapon into the ground after Floyd refused. (Dkt. # 27-8.)

Floyd described the suspect as a black male, 24-25 years old, standing about 5' 3'', weighing about 190 pounds, with a "big belly," a dark complexion, and medium-length dreadlocks. (*Id.*) Floyd further described the suspect as wearing a white t-shirt, blue jean shorts, and black gym shoes, and described the firearm as possibly being a nine millimeter. Floyd said the suspect entered a black vehicle, possibly a Mercury Mountaineer, and fled northbound. (*Id.*) Floyd, apparently recognizing the suspect, told the officers that he believed the suspect lived on either Goulburn or Waltham, between East 7 Mile and Lappin. (*Id.*) The investigation was turned over to Sergeant Matthew Fulks. (Dkt. # 27-2, Pg. ID 276.)

A few hours after the Fast Track robbery, officers responded to a reported carjacking at the Sunoco Gas Station, located at 1901 East 7 Mile. (Dkt. # 27-9.) Allen Williams, the victim, told the officers that a black male with a dark complexion, medium build, a goatee, and wearing a gray hooded sweatshirt and black pants, approached him with what appeared to be a nickel-plated revolver. (*Id.*) Williams told the officers that the suspect went through his pockets, taking his keys and wallet, before driving off with his 2000 Ford Crown Victoria. (*Id.*) The Sunoco carjacking was subsequently assigned to Defendant Russell. (Dkt. # 27-2, Pg. ID 277.)

Forty minutes after the Sunoco carjacking, Officer Kimberly Wright responded to another carjacking, this time at the Citgo Gas Station, located at 19030 Van Dyke Road in Detroit, three miles east of the Sunoco station. (Dkt. # 27-10.) The Citgo carjacking had three victims. (*Id.*) One victim, Donald Sanders, told Officer Wright that two black men, one wearing a gray hooded sweatshirt, pulled up in a Crown Victoria while the victims were walking out of the station. (*Id.*) Sanders stated that the passenger jumped

3

out of the vehicle armed with a silver handgun and demanded the keys to Sanders's black 2005 Dodge Durango. (*Id.*) Defendant Schmelter was assigned the Citgo carjacking. (Dkt. # 27-2, Pg. ID 277.)

Defendant Detective Dieasree Curry, as part of the Detroit Police Department's Crime Intelligence unit, identified Plaintiff as a possible suspect in the Fast Track robbery. (Dkt. # 27-11.) Defendant Curry based this suspicion on a prior investigation of a shooting resulting from a failed drug transaction in which Plaintiff was a victim, as well as Plaintiff's two previous arrests on gun and drug-related charges, all of which occurred at the Fast Track Gas Station. (*Id.*) Defendant Curry subsequently discovered that the vehicle described by Floyd matched a vehicle registered to Plaintiff's father. (*Id.*) Defendant Curry prepared a person of interest report (Dkt. # 27-12) and sent it to Sgt. Fulks and members of the Commercial Auto Theft unit. (Dkt. # 27-11.) The person of interest report included Plaintiff's full name, his race, sex, age, date of birth, height, address, and identifying tattoos. (Dkt. # 27-12.) The report also stated that Plaintiff was wanted on two outstanding arrest warrants.

Defendant Craighead assigned Defendant Russell to the Sunoco Carjacking investigation on the morning of June 8, 2015. (Dkt. # 27-14.) Defendant Russell reviewed the reports provided to her, including the person of interest report prepared by Defendant Curry. (*Id.*) Defendant Russell then contacted Williams by phone to take an informal statement and, later that afternoon, a formal statement. (*Id.*)

Defendant Schmelter, as officer-in-charge of the Citgo carjacking, also reviewed the person of interest report prepared by Defendant Curry. (Dkt. # 27-15.) Defendant Schmelter, relying on the identification of Plaintiff as a person of interest and

4

recognizing the proximity between Plaintiff's home and all three crime scenes, began canvassing the area around Plaintiff's home. (*Id.*) During this canvassing, Defendant Schmelter discovered the Dodge Durango from the Citgo carjacking parked in front of a vacant property a mile and a half from Plaintiff's home. (*Id.*) Defendant Schmelter then communicated this discovery to other officers, including Defendants Craighead, Russell, and Cross-Nelson. (*Id.*)

Defendant Craighead then authorized Defendant Cross-Nelson to prepare a photo array including Plaintiff for display to the witnesses. (Dkt. # 27-17.) Defendant Cross-Nelson had only Plaintiff's first and last name and, possibly, his date of birth. (Dkt. # 27-18.) Cross-Nelson entered the name "James Meeks" into the mug shot database, which returned three photographs. (*Id.*) Two of the photographs depicted Plaintiff, but the third depicted an unrelated individual named "James Meekslittle." (Dkt. # 27-18.) The display does not include names, dates of birth, addresses, social security numbers, or the like – only the mug shots. (Dkt. # 30-13.) Mistakenly believing that all three photos depicted Plaintiff, Defendant Cross-Nelson added another mistake to the pile by choosing the photo of James Meekslittle. (Dkt. # 27-17.)

Defendant Cross-Nelson then added five "filler" photographs taken from the mug shot database to complete the lineup. (*Id.*) When lineups such as this are printed, a "lineup composition report" is also printed on a separate page. (Dkt. # 27-2, Pg. ID 280.) The lineup composition report for this particular array identified the target as "James D. Meekslittle" and included his name, date of birth, social security number, and booking number, all different than Plaintiff's. (Dkt. # 27-20.) Defendant Cross-Nelson testified

that he does not recall if he noticed the name discrepancy at the time or cross-checked the date of birth, but he believed the photo to depict Plaintiff. (Dkt. # 27-17.)

That afternoon, Defendants Cross-Nelson, Craighead, and Russell showed the photo array to each victim of the Citgo carjacking. Two victims were unable to identify the assailant, but a third positively identified James Meekslittle. (Dkt. # 27-21.) Williams, the Sunoco victim, also positively identified Meekslittle as the assailant. (*Id.*)

By 6:30 p.m. the same day, Plaintiff was arrested, transported to the Ninth Precinct, processed, and booked without incident by officers uninvolved in this action. (Dkt. # 27-2, Pg. ID 281.) A search warrant for his residence was secured and executed. (*Id.*) In an interview the following day, Plaintiff confessed to the Fast Track robbery but denied involvement in either carjacking. (Dkt. # 27-28.)

Defendant Schmelter then informed Sgt. Fulks – the officer-in-charge of the Fast Track robbery – of Plaintiff's confession. (Dkt. # 27-15.) Defendant Schmelter further told Sgt. Fulks that Schmelter would be sending his report to the Wayne County Prosecutor's Office based on the witness identifications of Meekslittle – still believed to be identifications of Plaintiff. (*Id.*) Sgt. Fulks stated that he had not yet located Floyd, the Fast Track Robbery victim, who was subsequently discovered to have three outstanding arrest warrants of his own. (Dkt. # 27-13.) Defendants Schmelter and Russell elected to prepare and submit an Investigator's Report and Request for Warrant ("report and request") for each carjacking (Dkt. ## 27-29), but not for the Fast Track Robbery because Defendant Schmelter preferred to personally speak with victims before submission and Floyd could not be located. (Dkt. # 27-15.) It became known later that Floyd had three outstanding arrest warrants of his own. (Dkt. # 27-13.)

6

On the second page of his report and request regarding the Sunoco carjacking, Defendant Russell wrote:

> A photo array was prepared on Monday, June 8, 2015 by Detective Terry Cross-Nelson and myself (OIC) and Sergeant Otha Craighead showed the array to the complainant (Williams). The defendant (Meeks) was identiified immediately by the complainant (Williams) as the person who robbed and carjacked him for his 2000 Gray Ford Crown Victoria.

(Dkt. # 30-16.) On the third page, under the heading "Show – Ups[,]" Defendant Russell wrote:

> Yes, the complainant (Williams) identified the defendant (Meeks) immediately as the person who robbed and carjacked him on Monday, June 8, 2015 at approximately 5:10 AM.

(*Id.*) On his report and request regarding the Citgo carjacking, Defendant Schmelter wrote:

> Detective Terry Cross Nelson prepared a photo lineup and was [sic] presented to the complainants. Complainant (Hall) positively identified defendant (Meeks) as the person that carjacked them.

(Dkt. # 30-17.) On the third page, Defendant Schmelter wrote under the heading "Line – Ups": "Photo lineups were conducted and complainant (Hall) identified defendant (Meeks) as the person responsible for the carjacking." (*Id.*) Defendants submitted their report and requests on June 10, 2015. (Dkt. # 30, Pg. ID 505-06.) Plaintiff was subseqently charged with carjacking, armed robbery, and felony firearm possession with respect to the Sunoco carjacking, and three counts of carjacking, felony firearm, and carrying a concealed weapon with respect to the Citgo carjacking. (*Id.*) No warrant request for the Fast Track robbery has been submitted, and no charges resulting from it have been filed. (*Id.*)

7

Plaintiff appeared for his preliminary examination on June 14, 2015. (Dkt. # 27-2, Pg. ID 283.) Plaintiff's counsel requested a fingerprint comparison of Plaintiff and the individual identified by the carjacking victims, which established that Plaintiff was not the individual identified. (Dkt. # 27-30.) As a result, the carjacking charges were dismissed and Plaintiff was released later that day.

## II. STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003). The movant has the initial burden of showing the absence of a genuine dispute as to a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[T]hat burden may be discharged by showing . . . that there is an absence of evidence to support the nonmoving party's case." *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (internal quotation marks omitted).

The burden then shifts to the nonmovant, who must put forth enough evidence to show that there exists "a genuine issue for trial." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citation omitted). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986). In evaluating a summary judgment motion, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial . . .

credibility judgments and weighing of the evidence are prohibited." *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015) (internal quotation marks and citations omitted).

## III. DISCUSSION

Plaintiff alleges malicious prosecution against Defendants Craighead, Cross-Nelson, Russell, and Schmelter for their various roles leading up to his being charged in connection with the carjackings. (Dkt. # 1.) Plaintiff has agreed to dismiss Defendant Curry from the case. (Dkt. # 30, Pg. ID 493 n. 1.) Plaintiff also argues that the city is liable for its "de facto policy of violating constitutional rights by failing to take the necessary steps to ensure that a photo array is properly prepared." (*Id.* at Pg. ID 516.) Defendants argue that Defendant Officers are entitled to qualified immunity and that Plaintiff cannot identify a city policy or an obvious training deficiency. (Dkt. # 27.)

### A. Qualified Immunity

The doctrine of qualified immunity shields government officials "from liability for civil damages if their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Webb v. U.S.*, 789 F.3d 647, 659 (6th Cir. 2015) (quoting *Meals v. City of Memphis*, 493 F.3d 720, 729 (6th Cir. 2007)). The analysis involves a two step inquiry: (1) whether, viewing the record in the light most favorable to Plaintiff, a constitutional right has been violated; and (2) whether the right at issue was "clearly established" at the time. *Id.* Courts may address either prong first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Moreover, Plaintiff must show "that each [Defendant] officer, through his or her own actions, *personally* violated [P]laintiff's rights under clearly established law. *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015) (emphasis in original) (citations omitted)).

Plaintiff characterizes his malicious prosecution and unlawful detention arguments as his "primary claims" against Defendant Officers, and acknowledges that these "can be addressed together under the umbrella of a malicious prosecution claim." (Dkt. # 30, Pg. ID 509-10) (quoting *Gregory v. City of Louisville*, 444 F.3d 725, 747 (6th Cir. 2006) (internal quotation marks omitted).) "Freedom from malicious prosecution is a clearly established Fourth Amendment right." *Webb*, 789 F.3d at 659 (citing *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010)). In the Sixth Circuit, malicious prosecution consists of four elements:

> (1) a criminal prosecution was initiated against Plaintiff and Defendant "made, influenced, or participated in the decision to prosecute;"
>
> (2) there was no probable cause for the criminal prosecution;
>
> (3) as a consequence of the legal proceeding, Plaintiff suffered a deprivation of liberty apart from the initial seizure; and
>
> (4) the criminal proceeding was resolved in Plaintiff's favor.

*Id.* at 308-09. If Plaintiff "fails to present more than 'a scintilla of evidence' on any of these elements, [Defendants] must be granted summary judgment on the claim." *Kavanaugh v. Lexington Fayette Urban County Government*, 638 Fed. Appx. 446, 450 (6th Cir. 2015) (quoting *Anderson*, 477 U.S. at 252) (additional citations omitted). Plaintiff indisputably suffered a deprivation of liberty and the criminal proceeding was resolved in his favor. However, both the "no probable cause" and the "participation" factors require more careful analysis.

A facially valid warrant or indictment is "normally a complete defense to a federal constitutional claim . . . made pursuant to [section] 1983" because it conclusively establishes probable cause. *Robertson v. Lucas*, 753 F.3d 606, 618 (6th Cir. 2014)

(citations omitted); *Barnes v. Wright*, 449 F.3d 709, 716 (6th Cir. 2006) (citations omitted). An exception to this general rule exists where officers procure the warrant or indictment by making "material false statements either knowingly or in reckless disregard for the truth." *Sykes*, 625 F.3d at 312 (citing *Gregory v. City of Louisville*, 444 F.3d 725, 758 (6th Cir. 2006)).

Plaintiff must also show that each Defendant Officer "participated in the decision to prosecute." *Sykes*, 625 F.3d at 308. "The requisite participation in the decision to prosecute after probable cause has ceased to exist must amount to 'aiding' the decision in more than a passive or neutral way. *Johnson*, 790 F.3d at 654 (citing *Sykes*, 625 F.3d at 309 n.5). While, despite the name, there is no "malice" element to a malicious prosecution claim, "a defendant's participation must be marked by some kind of blameworthiness, something beyond mere negligence or innocent mistake." *Id.*

At the outset, the court concludes that nothing in the record suggests anything "beyond mere negligence or innocent mistake" on the part of Defendants Cross-Nelson and Craighead. *Id.* Plaintiff's claims against Defendant Cross-Nelson are based solely on Defendant's mistaking a photo of James Meekslittle for Plaintiff James Meeks, and against Defendant Craighead solely for failing to double check. (Dkt. # 30, Pg. ID 512-13.) Nothing in the record suggests, and Plaintiff does not argue, that Defendants Cross-Nelson and Craighead participated in the investigation after his arrest, actually knew of the mistaken identity until it was brought to their attention by Plaintiff's counsel, or "pressed" for prosecution in any non-neutral or blameworthy way. *Johnson*, 790 F.3d at 655. Nor does Plaintiff argue that Defendant Craighead "implicitly authorized,

approved, or knowingly acquiesced in the alleged unconstitutional conduct of an offending subordinate." *Webb*, 789 F.3d at 659.

Further, both Defendants' allegedly unconstitutional conduct is too far removed from the ultimate decision to prosecute to meaningfully count as "participation." The defendant in *Sykes* deliberately included materially false statements in his investigative report and request for warrant, and the prosecutor actually relied on them in proceeding with the prosecution, reproducing those same fabrications. *Sykes*, 625 F.3d at 316. Here, Defendant Cross-Nelson's unintentionally incorrect photo array went through several officers and witnesses before being relied on for statements in investigative reports and warrant requests which were themselves apparently relied upon in prosecuting Plaintiff. Defendant Craighead's involvement, though one degree fewer removed, is even more akin to an innocent mistake. The court concludes that neither Defendant can meaningfully be said to have "participated in" or "influenced" the decision to prosecute in a non-neutral way as required by *Johnson*, 790 F.3d at 654-55.

Plaintiff argues that Defendants Russell and Schmelter are liable for malicious prosecution because they included false statements in their report and requests. The "participation" standard for such an argument is the same as the standard for the exception to the facially-valid warrant defense: to succeed, Plaintiff must show that Defendants "(1) stated a deliberate falsehood or showed reckless disregard for the truth and (2) that the allegedly false or omitted information was material for the finding of probable cause." *Kavanaugh*, 638 Fed. Appx. at 455 (citing *Gregory*, 444 F.3d at 758); *see also Newman v. Township of Hamburg*, 773 F.3d 769, 771-72 (6th Cir. 2014) ("The Fourth Amendment conditions warrants on probable cause and prohibits unreasonable

12

seizures. A police officer violates those restrictions only when his deliberate or reckless falsehoods result in arrest without probable cause. The resulting claim . . . [is] a 'malicious prosecution' claim.") (citing *Sykes*, 625 F.3d at 310). The summary judgment context requires a "substantial showing" of at least the "deliberate falsehood or reckless disregard for the truth" prong. *See Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003) (citation omitted).

Defendant's report and requests stated that witnesses had identified Plaintiff in a photo array. These statements were indisputably false to the extent that they pointed to Meeks as the man photographically identified. However, while these statements were material to the finding of probable cause, there is scant support in the record for Plaintiff's allegation that the statements were made "deliberately or with reckless disregard for the truth," far too scant to qualify as "a substantial showing." It is, in fact, no more than a scintilla of evidence. *Id.*

To show "reckless disregard for the truth," Plaintiff relies entirely on Defendant's roles as officers-in-charge of their respective investigations and their failure to carefully review the lineup composition report before submitting their report and requests. (Dkt. # 30, Pg. ID 514-15.) Plaintiff argues, in essence, that Defendants "failed to conduct a proper investigation, [which] amounts to no more than a charge of negligence or innocent mistake, not the sort of 'deliberate or reckless falsehood' or otherwise blameworthy conduct required to make out a valid malicious prosecution claim." *Johnson*, 790 F.3d at 656 (citing *Newman v. Township of Hamburg*, 773 F.3d 769, 772 (6th Cir. 2014). That Defendants' mistakes led Plaintiff to be charged with crimes he did not commit is unfortunate, but Plaintiff has failed to point to more than a scintilla of

13

evidence in the record to support a finding that Defendant Officers "participated" in the decision to prosecute within the meaning of *Johnson*. As a result, the officers are entitled to qualified immunity and, accordingly, to summary judgment. *Kavanaugh*, 638 Fed. Appx. at 450.

### B. Municipal Liability

Municipalities are not liable for the constitutional torts of their employees. Rather, they are liable only for violations directly attributable to the municipality. *Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir. 1997) (citing *Monell*, 436 U.S. at 692). To state a claim against a city or county under section 1983, Plaintiff "must show that his injury was caused by an unconstitutional 'policy' or 'custom' of the municipality. *Id.* (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986)). In other words, "[p]laintiffs who seek to impose liability on local governments under [section] 1983 must prove that 'action pursuant to official municipal policy' caused their injury. *Connick v. Johnson*, 131 S. Ct. 1350, 1359 (2011) (quoting *Monell*, 436 U.S. at 692).

Not all "official municipal policy" is necessarily formalized – a *de facto* policy or stringently observed custom may expose municipalities to liability. *Id.* ("Official municipal policy includes . . . the practices so persistent and widespread as to practically have the force of law.") (citations omitted). Plaintiff argues that there is such a *de facto* policy among city officers "of not reviewing the photo array either before the photo array is presented to the witnesses or prior to the submission of the warrant request." (Dkt. # 30, Pg. ID 517.) In support, Plaintiff points to testimony by Defendants Russell and Schemelter "that as a matter of practice, the officers do not check the photo array and its accompanying composition sheet to ensure that the proper target is included[,]"

instead relying on the officer who prepared the array. (*Id.*) Their testimony, Plaintiff argues, constitutes "sufficient evidence in the record to raise a genuine issue of material fact" regarding the existence of a *de facto* policy. (*Id.*) The court disagrees.

Russell's and Schmelter's testimony is limited to their own practices. Russell testified that he did not double check the photo array in this particular instance, and did not speak to his usual practices. (Dkt. # 30-7, Pg. ID 570.) Schmelter testified that he personally would not check the photo array and would rely on the officer who compiled the photo array to do it correctly. (Dkt. # 30-4, Pg. ID 533.) Neither spoke to the practices of other detectives or officers.

The court concludes that the testimony of one officer regarding his personal practice, and of a second regarding a single instance, cannot suffice to establish "a practice so persistent and widespread as to practically have the force of law." *Connick*, 131 S. Ct. at 1359. Rather, the evidence that Plaintiff has pointed to establishes that the practice is "persistent" only with respect to Defendant Schmelter and "widespread" only among Defendant Schmelter and, on this particular occasion, Defendant Russell. Plaintiff cannot point to evidence in the record sufficient to create a genuine issue for trial. Accordingly, the city is entitled to summary judgment. *Moran*, 788 F.3d at 204.

Defendants argue that the court should construe Plaintiff's *Monell* claim as alleging a failure to adequately train officers "on the compilation and presentation of photo arrays." (Dkt. # 31, Pg. ID 642.) Because the court concludes that Plaintiff's argument fails on its own terms, it will not address the "failure to train" doctrine at length. While it is obvious that more care should have been taken, and more scrutiny given to cross-checking photos and their accompanying identification data, Plaintiff has failed to

offer any evidence suggesting that this incident was anything other than a singular aberrant occurrence. That these mistakes —committed serially by police professionals and citizen victims— are apparently so rare suggests that the alleged deficiency would not be obvious. *See City of Canton v. Harris*, 489 U.S. 379, 388 (1989) (holding that the need for training must be "so obvious, and a training inadequacy so likely to cause a constitutional violation, than an inference of deliberate indifference may be reached").

## IV. CONCLUSION

IT IS ORDERED that Defendants' Motion for Summary Judgment (Dkt. # 27) is GRANTED. A separate judgment shall issue.

    /s/ Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  November 16, 2016


I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, November 16, 2016, by electronic and/or ordinary mail.

    s/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522

S:\Cleland\JUDGE'S DESK\C1 ORDERS\15-14270.MEEKS.summary.judgment.tlh.RHC.wpd